**SO ORDERED: April 07, 2005.**



_____
**Basil H. Lorch III
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| River Valley Technologies, Inc., | ) | Case No. 04-90452-BHL-11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| River Valley Technologies, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 04-9013 |
| | ) | |
| Commercial Credit Counseling | ) | |
| Services, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

<u>JUDGMENT</u>

This matter comes before the court on a **Complaint to Avoid Fraudulent Transfers**, filed by River Valley Technologies, Inc., on March 2, 2004. On April 13, 2004, Commercial Credit Counseling Services, Inc., filed its **Answer and Counterclaim**. Trial was set and the matter heard

on December 6, 2004. The Court took evidence, heard testimony from the parties, and heard arguments by counsel. After fully considering all of the above, and for the reasons set forth in the Memorandum below, the Court finds that the relief sought by River Valley Technologies, Inc., in its **Complaint to Avoid Fraudulent Transfers** should be, and hereby is, **GRANTED**. Accordingly, **JUDGMENT** in favor of River Valley Technologies, Inc., is entered in the amount of $49,725.00.

## MEMORANDUM

River Valley Technologies, Inc. ("RVT"), the debtor in the above-captioned bankruptcy case, brought this adversary proceeding pursuant to 11 U.S.C. § 548(a)(1)(B) to avoid transfers of property it made to Commercial Credit Counseling Services, Inc. ("CCCS"), in the months just prior to RVT filing its petition.

## Factual Background

Financially strained, RVT was unable to make lease payments on several items of equipment that were essential to its machine shop business. One creditor, General Electric Credit Corporation ("GECC"), obtained writs of replevin on two of those pieces of equipment in which it had fully secured interests. In the event GECC executed the writs, RVT would be unable to continue operations. As a last resort before bankruptcy, RVT contacted CCCS after receiving one of its fliers. In July of 2003 RVT signed a contract (the "Contract") with CCCS. Under the terms of the agreement RVT would make weekly payments of $2,925.00 with the understanding that these payments would be used by CCCS to establish a pool of funds from which settlements negotiated by CCCS would be paid to RVT's creditors. The Contract called for CCCS to provide this service on a contingency basis, the fee consisting of 33 1/3% of any reduction in RVT's indebtedness that CCCS negotiated. The Contract also contained a liquidated damages clause under which RVT

would forfeit the accumulated payments to CCCS if RVT negotiated with its creditors outside of the workout program.

RVT made seventeen payments of $2,925.00 to CCCS totaling $49,725.00. Over the course of these seventeen weeks CCCS negotiated no settlements of, or reductions in, RVT's debts. In the meantime, RVT's attorney, Neil Bordy, negotiated a settlement with GECC. To consummate the settlement, however, Bordy needed the cash RVT had paid CCCS to fund the workout program. Bordy requested that CCCS return the payments and offered to compensate CCCS for its time and efforts. CCCS refused, and with the knowledge that RVT had authorized Bordy to negotiate with GECC outside of the workout program, claimed the entire $49,725.00 as liquidated damages for RVT's breach of contract. RVT filed its petition under Chapter 11 of the Bankruptcy Code on February 17, 2004.

Analysis

RVT seeks to avoid the transfer of the $49,725.00 in payments under the Contract with CCCS as a fraudulent conveyance under 11 U.S.C. § 548. Section 548(a)(1)(B)(i)-(ii)(I) provides:

> The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily - (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)(I) was insolvent on the date such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation....

The undisputed facts of the case plainly satisfy three of the four elements of this section: (1) the cash RVT paid to CCCS under the workout agreement was RVT's property when it made the payments; (2) RVT was insolvent at the time of those payments; and (3) the payments were made

3

within the twelve months prior to RVT's filing its chapter 11 petition. The question for the Court then is whether RVT received anything from CCCS reasonably equivalent in value to the payments it made.

To prevail in a fraudulent conveyance action under § 548 the plaintiff must prove that the debtor received less than reasonably equivalent value. *In re Bundles*, 856 F.2d 815, 816-17 (7th Cir. 1988). There is no element of intent in § 548(a)(1)(B)(i)-(ii)(I); the "fraud" that the statute addresses is constructive, that is, in law, rather than in fact. As such, the inquiry the section requires is not whether the debtor intended to defraud his creditors in making a prepetition transfer of property, but only whether the value received by the debtor is "reasonably equivalent" to the value of the property transferred in exchange for it. To make this determination the court must compare the value of the property transferred with the value of what was received. *Matter of Vitreous Steel Products Co.*, 911 F.2d 1223 (7th Cir. 1990).

In this case the value of the property transferred from the debtor is evident: RVT made cash payments totaling $49,725.00. These payments were made not for services rendered, however, but to fund a settlement pool, held by CCCS, from which it would pay RVT's creditors in the event it negotiated a settlement. Had CCCS made any such settlements, it would then have been entitled to a contingency fee calculated on the value of the reduction of the debt. Whether such reductions were ever even within the realm of possibility given that RVT's creditors were fully secured is doubtful, but not really relevant because the transfer of property at issue here was not made in payment of a contingency fee. CCCS never collected a contingency fee because it never negotiated a reduction in RVT's debts. Rather, the transfer of RVT's property actually occurred when CCCS claimed the entirety of the workout fund as liquidated damages for RVT's breach of contract.

4

What value, if any, did RVT receive in exchange for its forfeiture of the settlement fund? At trial CCCS argued that RVT received the benefit of the delay of its creditors in foreclosing on their collateral and thus an opportunity to restructure its debts. But that is not the agreement reflected in the Contract. CCCS was to be paid only in the event it satisfied the contingency of reducing RVT's indebtedness. In fact, CCCS claimed the funds, not in exchange for services performed or a contingency satisfied, but for RVT's breach of a clause in the Contract.

Whether the liquidated damages clause in the Contract was in the nature of a penalty or an accurate pre-estimate of the damages CCCS would suffer in the event of RVT's breach is not, in the Court's view, relevant under the § 548 test. The test is whether the debtor received reasonably equivalent value for the transfer of its property. For its forfeiture of $49,725.00, RVT received nothing of value whatsoever, let alone anything of reasonably equivalent value.

Therefore, under § 548, the transfer of the $49,725.00 constitutes a fraudulent conveyance and is avoidable. Accordingly, the Court finds that the relief sought by River Valley Technologies, Inc., in its **Complaint to Avoid Fraudulent Transfers** should be, and hereby is, **GRANTED**.

# # #